**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

KENNETH COLE, SR.,
on behalf of Plaintiff and the
class members described herein,

Plaintiff,

vs.

NEWREZ LLC, doing business as
SHELLPOINT, and
U. S. BANK TRUST NATIONAL
ASSOCIATION,

Defendants.

25cv04265
Judge Alexakis
Magistrate Judge Valdez

**SECOND AMENDED COMPLAINT – CLASS ACTION**

## INTRODUCTION

1. Plaintiff Kenneth Cole, Sr. brings this action against NewRez LLC, doing business as Shellpoint ("Shellpoint"), and U.S. Bank Trust National Association ("USB") to secure redress against the unfair and deceptive collection of "Zombie mortgages" originated prior to the financial crisis of 2008, and on which no activity has occurred for a decade or more.

2. The Consumer Financial Protection Bureau issued Advisory Opinion 2023-4 regarding this practice, stating:

> Leading up to the 2008 financial crisis, many lenders originated mortgages to consumers without considering their ability to repay the loans. These practices, which harmed millions of people, included in some cases originating products such as "piggyback" mortgages in which high-interest second mortgages were issued simultaneously with the origination of the first mortgage. One common piggyback mortgage product, known as an 80/20 loan, involved a first lien loan for 80 percent of the value of the home and a second lien loan for the remaining 20 percent of the valuation. Some consumers in these loans found themselves unable to make full payments on their first and second mortgages, and when housing prices began to decline in 2005, refinancing became more difficult.
>
> When a borrower defaults on a second mortgage, the mortgage holder may be able to initiate a foreclosure even if the borrower is current on the first mortgage. However, the second mortgage holder only receives proceeds from the foreclosure sale if there are any funds left after paying off the first mortgage. As a result, many second mortgage holders of piggyback loans, recognizing that a foreclosure would not generate enough money to cover even the first mortgage, charged their defaulted loans off as uncollectible and ceased communicating

with the borrowers. Some sold the loans to debt buyers, often for pennies on the dollar. Such sales often occurred unbeknownst to borrowers, who continued to receive no communications regarding the loans. Many borrowers, having not received any notices or periodic statements for years, concluded that their second mortgages had been modified along with the first mortgage, discharged in bankruptcy, or forgiven.

In recent years, as home prices have increased and borrowers have paid down their first mortgages, after years of silence, some borrowers are hearing from companies that claim to own or have the right to collect on their long-dormant second mortgages. These companies often demand the outstanding balance on the second mortgage, plus fees and interest, and threaten to foreclose if the borrower does not or cannot pay. The CFPB is concerned about homeowners who survived the 2008 financial crisis but who are now facing foreclosure threats and other collection activity because of long-dormant second mortgages. These borrowers are often told that they face a choice between entering into onerous payment plans or losing their homes and the equity they have diligently built since the financial crisis. . . .

## JURISDICTION AND VENUE

3. This action was removed to this Court by Defendant.

## PARTIES

4. Plaintiff resides in Olympia Fields, Illinois, in a condominium unit he owns.

5. Defendant NewRez LLC, doing business as Shellpoint ("Shellpoint"), is a limited liability company organized under Delaware law with a principal address of 601 Office Center Drive, Suite 100, Fort Washington, PA 19034. It is engaged in the business of servicing mortgages. It does business in Illinois. Its registered agent and office is Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, IL 62703-4261.

6. Shellpoint is the "special servicing division" of NewRez. (Appendix A) A "special servicer" is mortgage industry jargon for a mortgage company that services delinquent and defaulted loans, as opposed to performing loans.

7. Shellpoint is a licensee under the Illinois Residential Mortgage License Act.

8. Shellpoint regularly acquires delinquent and defaulted mortgage loans, including the loan of Plaintiff, described below.

9. Shellpoint uses the mails and Internet to conduct business.

10. Shellpoint is a debt collector as defined in the Fair Debt Collection Practices Act, 15

U.S.C. §1692 et seq. ("FDCPA"). It is also a servicer.

11. Defendant U.S. Bank Trust National Association is a corporation with offices at 1011 Centre Road, Suite 203, Wilmington, DE 19805. It also uses the address of 60 Livingston Avenue, EP-MN-WS3D, St. Paul, MN 55107.

12. Defendant U.S. Bank Trust National Association is also a debt collector as defined in the FDCPA, insofar as it acquires loans that are in default.

**FACTS**

13. On January 26, 2007, Plaintiff obtained a second mortgage loan secured by his residence from Capital One Home Loans, LLC. A copy of the mortgage is in Appendix B. A copy of the note is in Appendix C.

14. The loan was obtained and used for personal, family or household purposes and not for business purposes.

15. In 2009 Plaintiff encountered financial difficulty and filed a Chapter 7 bankruptcy. At the time, the balance on the second mortgage loan was about $90,556.

16. Plaintiff's personal obligation under Appendix C was discharged.

17. Plaintiff's bankruptcy schedules indicated an intent to retain the property and reaffirm the debt. However, no reaffirmation agreement was filed.

18. No payments were made under the second mortgage loan after August 2009.

19. At the time of the Chapter 7 filing, the second mortgage loan was held by Homecomings Financial.

20. On information and belief, the loan was classified as a bad debt and charged off after it was delinquent 180 days, which was in late 2009.

21. No statements were sent to Plaintiff regarding the loan at issue between July 2009 and September 1, 2024, by anyone.

22. Regulation Z, 12 C.F.R. §1026.41, provides:

a. That mortgage servicer on "a closed-end consumer credit transaction secured

by a dwelling" must provide monthly periodic statements (§1026.41(a));

b. This includes consumers who have obtained a bankruptcy discharge if their petition states an intention to retain the property (§1026.41(e)(5));

c. Loans that have been charged off are exempt if the servicer "will not charge any additional fees or interest on the account" (§1026.41(e)(6)(i));

d. If the servicer charges any additional fees or interest on the account, "the obligation to provide a periodic statement pursuant to this section resumes," and a "servicer may not retroactively assess fees or interest on the account for the period of time during which the exemption in paragraph (e)(6)(i) of this section applied." (§1026.41(e)(6)(ii))

23. 12 C.F.R. §1026.41 was originally issued by the Consumer Financial Protection Bureau at 78 FR 10902 (Feb. 14, 2013), effective January 10, 2014. The provisions expressly prohibiting the addition of fees and interest without monthly statements were added by the CFPB at 81 FR 72160 (Oct. 19, 2016), effective April 19, 2018 (81 FR at 72388).

24. Under the regulations implementing the Illinois Residential Mortgage License Act, 38 Ill. Admin. Code §1050.870, Shellpoint's servicing procedures "shall comply with applicable federal and State statutes and regulations . . . ."

25. Plaintiff contends that interest or fees imposed during a period of failure to send monthly statements after January 10, 2014 are not owed and may not be collected, and that the attempted collection of such interest and fees is both unfair and deceptive, in that, as pointed out by the CFPB in Advisory Opinion 2023-4, the debt is greatly increased without apprising the consumer of the continually increasing amount, as required by law.

26. Plaintiff contends that, apart from any specific requirements of TILA and Regulation Z, it is unfair and deceptive and contrary to public policy for the holder or servicer of a residential mortgage loan to fail to send periodic statements while accruing large amounts of interest.

*Cruz v. Cameron Fin. Grp. Inc.,* 23cv01112, 2024 U.S. Dist. LEXIS 14964, *8, 2024 WL 326957 (D.Ariz. Jan. 29, 2024).

27. Plaintiff contends that if a servicer failed to send periodic statements as required, the undisclosed interest could not be collected under Illinois law, with consequences under the FDCPA and Illinois Consumer Fraud Act.

28. On or about April 11, 2016, Specialized Loan Servicing, LLC sent Plaintiff the letter in Appendix D.

29. On April 11, 2016, the loan was in default.

30. Specialized Loan Servicing, LLC was a debt collector as defined in the FDCPA.

31. Specialized Loan Servicing, LLC was a "special servicer" and obtained ratings as such. (Appendix E)

32. On or about May 2, 2024, Shellpoint sent Plaintiff the letter in Appendix F.

33. Shellpoint had acquired the business of Specialized Loan Servicing LLC through a merger or equivalent transaction. (Appendix G)

34. On September 1, 2024 Shellpoint sent Plaintiff the statement in Appendix H.

35. Appendix H claimed that Plaintiff owed the payments from December 1, 2008 to present, including all interest and fees that came due during that period, including for periods when no statements were sent to Plaintiff.

36. On November 4, 2024, Shellpoint sent Plaintiff the letter in Appendix I.

37. Appendix I sought all payments from December 1, 2008 to November 1, 2024, including interest and fees for periods after January 10, 2014 when no statements were sent to Plaintiff, and threatened foreclosure.

38. Appendix I stated that the owner of the loan was U. S. Bank Trust National Association, acting as trustee of a 2021 trust.

39. Plaintiff's loan was in default in 2021.

40. On November 21, 2024, Shellpoint sent Plaintiff the letter in Appendix J. Appendix

J sought interest and fees for December 1, 2008 to December 15, 2024. It stated that "The next payment due date is 12/1/2008," meaning that the last payment credited was that for November 1, 2008. Appendix J claimed that the principal balance was $85,047.39 and that interest to 12/15/24 was $133,682.98.

41. On February 20, 2025, Shellpoint sent Plaintiff the letter in Appendix K. Appendix K also sought interest and fees for periods after January 10, 2014 when no statements were sent to Plaintiff.

42. The acts and knowledge of Shellpoint are attributable to U. S. Bank Trust National Association, its principal.

43. The purpose of Appendices H-K was to coerce and intimidate Plaintiff into paying money he did not owe to avoid foreclosure.

44. As a result of Shellpoint's demand, Plaintiff was damaged, in that:

a. He was required to retain counsel;

b. He was required to spend time and money addressing Shellpoint's demand;

c. He suffered aggravation and distress at the prospect of losing his home.

**COUNT I – ILLINOIS CONSUMER FRAUD ACT**

45. Plaintiff incorporates paragraphs 1-44.

46. This claim is against both Defendants.

47. Defendant Shellpoint engaged in unfair and deceptive acts and practices, in violation of 815 ILCS 505/2, by adding to the debt and demanding payment of interest and fees for periods after January 10, 2014 during which no monthly statements were sent, which interest and fees were not owed.

48. Such conduct is contrary to public policy, as set forth in Consumer Financial Protection Bureau Advisory Opinion 2023-4 and 12 C.F.R. §1026.41, unethical, and injurious to consumers.

49. Conduct is "unfair" if it "offends public policy as it has been established by statutes,

the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory, or otherwise established concept of unfairness"; (2) "is immoral, unethical, oppressive, or unscrupulous," and/or (3) "causes substantial injury to consumers." *Federal Trade Comm'n v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244, n.5 (1972); *Robinson v. Toyota Motor Credit Corp.,* 201 Ill. 2d 403, 417-18, 775 N.E.2d 951 (2002). It is not necessary that there be a private right of action under the relevant statutes.

50. Documents in which such amounts were sought include Appendices H-K.

51. A debt collector which adds unauthorized amounts to a debt or claims rights which it does not have violates 815 ILCS 505/2. *People ex rel. Daley v. Datacom Sys. Corp.,* 146 Ill. 2d 1, 585 N.E.2d 51 (1991); *Grant-Hall v. Cavalry Portfolio Servs., LLC,* 856 F. Supp. 2d 929, 942 (N.D. Ill. 2012);

52. Defendant U. S. Bank Trust National Association is liable as Shellpoint's principal.

53. Defendants engaged in such conduct in the course of trade and commerce in financial services.

54. Defendants engaged in such conduct for the purpose of obtaining money from Plaintiff.

**CLASS ALLEGATIONS**

55. Plaintiff brings this claim on behalf of a class and subclass pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

56. The class consists of (a) all individuals (b) with an closed end mortgage loan (c) secured by Illinois real estate (d) to whom Shellpoint sent a document requiring payment to avoid foreclosure of a security interest (e) which document was sent on or after March 14, 2022 (three years prior to the filing of this action) (f) where the amount sought includes interest and fees attributable to periods after January 10, 2014 when no statements were sent to the person.

57. The subclass consists of class members whose loans are owned by U. S. Bank Trust National Association, as trustee for any entity.

58. Plaintiff may alter the class definitions to conform to developments in the case and discovery.

59. On information and belief, there are more than 40 members of the class and subclass, and they are each so numerous that joinder of all members is not practicable.

60. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

a. Whether Shellpoint is barred from collecting interest and fees for periods during which no statements were sent;

b. Whether Shellpoint attempts to collect interest and fees attributable to periods during which no statements were sent;

c. Whether such practice violates the ICFA.

61. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

62. A class action is appropriate for the fair and efficient adjudication of this matter, in that:

a. Individual actions are not economically feasible.

b. Members of the class are likely to be unaware of their rights;

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class members and against Defendants for:

i. Actual damages;

ii. Punitive damages;

iii. Attorney's fees, litigation expenses and costs of suit (815 ILCS 505/10a);

iv. Such other and further relief as the Court deems proper.

## COUNT II – FAIR DEBT COLLECTION PRACTICES ACT

63. Plaintiff incorporates paragraphs 1-44.

64. This claim is against Shellpoint.

65. The FDCPA broadly prohibits unfair or unconscionable collection methods, conduct which harasses or abuses any debtor, and the use of any false or deceptive statements in connection with debt collection attempts. It also requires debt collectors to give debtors certain information. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

66. In enacting the FDCPA, Congress found that: "[there is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. §1692(a).

67. Because of this, courts have held that "the FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct" and that "[t]his intent cannot be underestimated." *Ramirez v. Apex Financial Management LLC*, 567 F.Supp.2d 1035, 1042 (N.D. Ill. 2008).

68. The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies and protect the civil rights expressed therein. *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001).

69. Plaintiff seeks to enforce those policies and civil rights which are expressed through the FDCPA, 15 U.S.C. §1692 *et seq.*

70. Section 1692e provides:

> False or misleading representations
>
> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .
>
> (2) The false representation of—
>
> (A) the character, amount, or legal status of any debt; . . .

(4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .

71. Section 1692f provides:

Unfair Practices

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. . . .

72. Defendant Shellpoint, a debt collector, violated these provisions by seeking to collect interest and fees for periods after January 10, 2014 when no statements were sent to Plaintiff, and which was not permitted to be added to the debt under Illinois law.

73. Documents in which such amounts were sought include Appendices H-K.

## CLASS ALLEGATIONS

74. Plaintiff brings this claim on behalf of a class and subclass pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

75. The class consists of (a) all individuals (b) with an closed end mortgage loan (c) secured by Illinois real estate (d) to whom Shellpoint sent a document requiring payment to avoid foreclosure of a security interest (e) which document was sent on or after March 14, 2024 (one year prior to the filing of this action) (f) where the amounts sought include interest and fees attributable to periods after January 10, 2014 when no statements were sent to the person.

76. The subclass consists of class members whose loans are owned by U. S. Bank Trust National Association, as trustee for any entity.

77. Plaintiff may alter the class definition to conform to developments in the case and discovery.

78. On information and belief, there are more than 40 members of the class and subclass, and each is so numerous that joinder of all members is not practicable.

79. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

a. Whether Shellpoint is barred from collecting interest and fees for periods after January 10, 2014 during which no statements were sent;

b. Whether Shellpoint attempts to collect interest and fees attributable to periods during which no statements were sent;

c. Whether such practice violates the FDCPA.

80. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and FDCPA litigation. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

81. A class action is appropriate for the fair and efficient adjudication of this matter, in that:

a. Individual actions are not economically feasible.

b. Members of the class are likely to be unaware of their rights;

c. Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class members and against Defendants for:

i. Statutory damages (15 U.S.C. §1692k);

ii. Actual damages;

iii. Attorney's fees, litigation expenses and costs of suit (15 U.S.C.

§1692k);

iv. Such other and further relief as the Court deems proper.

**COUNT III – DECLARATORY AND INJUNCTIVE RELIEF REGARDING AMOUNT OWED UNDER CONTRACT (NOTE AND MORTGAGE)**

82. Plaintiff incorporates paragraphs 1-44.

83. This claim is against both Defendants.

84. There is a controversy between the parties as to whether the amount Defendants are seeking to collect, including interest and fees for January 10, 2014 through September 1, 2024, is owed. Plaintiff contends that Defendants are not entitled to collect interest and fees for periods when statements were required to be sent, but were not sent, as such is an unfair practice and a violation of the Illinois Consumer Fraud Act. Defendants demand payment of such sums.

85. The controversy can be resolved by a judicial declaration.

86. Plaintiff seeks declaratory and injunctive relief finding that interest and fees attributable to periods after January 10, 2014 during which no statements were sent are not collectible, and enjoining further collection efforts to collect such interest and fees.

87. A debtor has the right to bring an action against a putative creditor for declaratory and injunctive relief that the debt is not owed in whole or in part. *Tepper v. County of Lake*, 233 Ill. App. 3d 80, 598 N.E.2d 361 (2d Dist. 1992); *Davis v. Bank of America, N.A.*, 515 F. Supp. 3d 858 (N.D. Ill. 2021).

88. Otherwise, the putative creditor can harass the debtor with extra-judicial collection methods, inflicting distress and pecuniary injury, while memories fade and evidence becomes unavailable.

**CLASS ALLEGATIONS**

89. Plaintiff brings this claim on behalf of a class and subclass pursuant to Fed.R.Civ.P. 23(a) and (b)(2).

90. The class consists of (a) all individuals (b) with a closed end mortgage loan (c)

secured by Illinois real estate (d) to whom Shellpoint sent a document requiring payment to avoid foreclosure of a security interest (e) where the amount sought includes interest and fees attributable to periods after January 10, 2014 when no statements were sent to the individual, and (f) the loan has not been satisfied, according to Shellpoint's records.

91. The subclass consists of class members whose loans are owned by U. S. Bank Trust National Association, as trustee for any entity.

92. Plaintiff may alter the class definitions to conform to developments in the case and discovery.

93. On information and belief, there are more than 40 members of the class and subclass, and the class and subclass are each so numerous that joinder of all members is not practicable.

94. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common question is whether interest may be collected for periods during which monthly statements were not sent to the borrower.

95. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

96. A class action is appropriate for the fair and efficient adjudication of this matter, in that:

a. Individual actions are not economically feasible.

b. Members of the class are likely to be unaware of their rights;

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class members and against Defendants for:

i. A declaration that interest and fees may not be collected on the class members' credit agreements and mortgages during periods for which

they were not sent statements.

ii. Costs of suit;

iii. Such other and further relief as the Court deems proper.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Tara L. Goodwin
Caileen M. Crecco
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1800
Chicago, IL 60603-1841
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com
dedelman@edcombs.com
tgoodwin@edcombs.com
ccrecco@edcombs.com

T:\41518\Second Amended Complaint_.wpd

## JURY DEMAND

Plaintiff demands trial by jury.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

## CERTIFICATE OF SERVICE

Daniel A. Edelman certifies that on December 30, 2025, this document was filed via ECF, causing a copy to be sent to all counsel of record.

*/s/ Daniel A. Edelman*
Daniel A. Edelman